Hossein **MOHSENZADEH**, Plaintiff,

v.

Michelle K. **LEE**,[1] Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office, Defendant.

Case No. 1:13–cv–00824–GBL–TCB.

United States District Court,
E.D. Virginia,
ALexandria Division.

Signed March 19, 2014.

1. On January 13, 2014, Deputy Director Michelle K. Lee assumed the duties and functions of the Under Secretary of Commerce for Intellectual Property and Director of the USPTO, a position that is currently vacant. Accordingly, Ms. Lee should be substituted for Theresa Stanek Rea. See Fed.R.Civ.P. 25(d). The Clerk is directed to substitute Michelle K. Lee for Teresa Stanek Rea on the docket. Furthermore, the caption on all future filings should read: *Michelle K. Lee.*

Michael Andrew Oakes, Hunton & Williams LLP, Washington, DC, for Plaintiff.

Antonia Konkoly, US Attorney's Office, Alexandria, VA, for Defendant.

### MEMORANDUM OPINION AND ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on the parties' cross-motions for summary judgment (Docs. 10 and 13). This case concerns the determination of patent term adjustment ("PTA") for Plaintiff Hossein Mohsenzadeh's divisional patents, U.S. Patent No. 8,352,362 ("the '362 patent") and U.S. Patent No. 8,401,963 ("the '963 patent"). The issue before the Court is whether divisional patents should receive PTA that arose due to a delay in the issuance of a restriction requirement in their parent patent's application.

The Court GRANTS Defendant's Motion for Summary Judgment (Doc. 13) and DENIES Plaintiff's Motion for Summary Judgment (Doc. 10) for two reasons. First, the Court holds that the language of 35 U.S.C. § 154 ("the PTA Statute") unambiguously applies to only one patent application—providing PTA only for delays that occurred during the prosecution of the application from which the patent issued. Alternatively, the Court holds that to the extent § 154(b)(1)(A) is ambiguous, the United States Patent and Trademark Office's longstanding interpretation of the PTA Statute, as manifested in 37 C.F.R. §§ 1.702, 1.703, and 1.704(c)(12), is reasonable and entitled to some deference.

## I. BACKGROUND

### A. Statutory Framework

#### i. Patent Application Process

The patent application process begins with an applicant filing a patent application at the United States Patent and Trademark Office ("USPTO"). 35 U.S.C. § 111(a). The patent application undergoes a process of examination to determine whether the requirements for patentability have been met. *Id.* § 131. Often the first official action of the USPTO is the issuance of a restriction requirement. *Id.* § 132.

A restriction requirement is issued when a patent examiner determines that a patent application contains two or more independent and distinct inventions. *Id.* § 121. The restriction requirement divides the claims presented in the application into multiple groups. One group can be pursued in the application where the restriction requirement is made, while the other groups can be pursued by filing one or more divisional applications. *Id.* Divisional applications constitute new applications that receive special protections differentiating them from original patent applications. First, 35 U.S.C. § 121 mandates that a divisional application "shall be entitled to the benefit of the filing date of the original application." *Id.* Second, § 121 includes a "safe-harbor" provision whereby the parent application cannot be used as a reference against the divisional application so long as the divisional application was filed before the issuance of parent patent. *Id.; see also Pfizer v. Teva Pharm. USA,* 518 F.3d 1353 (Fed.Cir.2008).

#### ii. Term of a Patent

■ A patent's enforceability begins on the issue date of the patent and ends twenty years from the patent application's effective filing date, which is the earliest filing date for which priority is claimed. 35 U.S.C. § 154(a)(2). Accordingly, when a divisional application results in a patent, its twenty year term is measured from the filing date of the parent patent application.

Because the examination process takes time, the enforceable lifetime of a patent is necessarily reduced by the amount of time it takes the USPTO to conduct the patent's examination. As such, Congress established patent term adjustments ("PTA") to compensate inventors for unreasonably long delays by the USPTO.

### a. Patent Term Adjustment Statute (35 U.S.C. § 154)

■ To understand the role of PTA in the enforceable life of a patent, it is important to understand the history of 35 U.S.C. § 154(b). Prior to 1994, before adoption of the General Agreement on Tariffs and Trade ("GATT"), a patent term was calculated as seventeen years from the issue date. *Novartis AG v. Lee*, 740 F.3d 593, 595 (Fed.Cir.2014). In 1994, Congress changed the effective term of a patent from seventeen years commencing from issuance to twenty years commencing from filing.[2] *See* Uruguay Round Agreements Act, Pub.L. No. 103–465, § 532, 108 Stat. 4809, 4984 (1994). Under the seventeen-year regime, USPTO delays did not affect patent terms because a term commenced upon issuance rather than filing. Under the twenty-year regime, however, USPTO delays had the potential to consume the entirety of a patent's effective term. *See Wyeth v. Kappos*, 591 F.3d 1364, 1366 (Fed.Cir.2010).

Most recently, in 1999, the American Inventors Protection Act ("AIPA") amended 35 U.S.C. § 154(b) to address this problem and protect patent terms from the effects of USPTO delay. "The new Act promised patent applicants a full patent term adjustment for any delay during prosecution caused by the PTO." *Wyeth*, 591 F.3d at 1366. Under the amended statute, the USPTO calculates patent term adjustments by considering three classes of USPTO delay: (i) an "A-delay," which awards PTA for delays arising from the USPTO's failure to act by certain examination deadlines; (ii) a "B-delay," which awards PTA for an application pendency exceeding three years; and (iii) a "C-delay," which awards PTA for delays due to interferences, secrecy orders, and appeals. The USPTO calculates PTA by adding the A-, B-, and C-delays, subtracting any overlapping days, and then subtracting any days attributable to applicant delay. *Wyeth*, 591 F.3d at 1367.

The A-delay is the delay applicable in this case. The relevant portion of the PTA Statute describing A-delay provides as follows:

> **(A) Guarantee of prompt Patent and Trademark Office responses.**—Subject to the limitations under paragraph (2), if the issue of an original patent is delayed due to the failure of the Patent and Trademark Office to—

---

**2.** As the USPTO explained in oral argument, this change was partly a response to the problem of "submarine" patents. Submarine patents involve an applicant's use of delay tactics during patent prosecution to have a period of control over patents as late as possible to "maximize the economic returns from when the patent right is enforced." 3 Moy's Walker on Patents § 11:20 (4th ed. 2013); *see also Exelixis, Inc. v. Kappos*, 919 F.Supp.2d 689, 698 (E.D.Va.2013) *vacated and remanded sub nom. Exelixis, Inc. v. Lee*, 2013–1175, 2014 WL 128612 (Fed.Cir. Jan. 15, 2014) ("The

decision to measure the term of a patent from the date of filing instead of the date of issuance was at least partly motivated by fear of so-called 'submarine' patents filed by applicants who had discovered that they could file 'continuation prosecution applications' (CPAs) to indefinitely delay the USPTO's completion of its examination, thereby keeping their applications 'pending and secret until an industry with substantial investment in the technology can be targeted in an infringement suit.'" (citing *House Panel Examines Bills on Patent Law Reforms*, 51 Pat. Trademark & Copyright J. (BNA) 50 (1995))).

(i) provide at least one of the notifications under section 132 [3] or a notice of allowance under section 151 not later than 14 months after—

 (I) the date on which an application was filed under section 111(a);

. . .

the term of the patent shall be extended 1 day for each day after the end of the period specified in clause (i), (ii), (iii), or (iv), as the case may be, until the action described in such clause is taken.

35 U.S.C. § 154(b)(1)(A).

The PTA Statute also accounts for delays by the patent applicant. PTA is reduced for a patent applicant's "fail[ure] to engage in reasonable efforts to conclude prosecution of the application." *Id.* § 154(b)(2)(C)(i). Section 154(b)(2)(C)(iii) explicitly provides that "[t]he Director shall prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application." In addition to this grant of substantive rulemaking authority, the PTA Statute provides for general procedural rulemaking authority in section 154(b)(3)(A) stating that "[t]he Director shall prescribe regulations establishing procedures for the application for and determination of patent term adjustments under this subsection."

To the extent that an applicant is dissatisfied with the USPTO's determination of PTA, the PTA Statute grants the applicant one opportunity to request reconsideration of the PTA determination. *Id.* § 154(b)(3)(B)(ii). If an applicant is still dissatisfied following the USPTO's recon-

sideration of PTA, the applicant "shall have exclusive remedy by a civil action against the Director filed in the United States District Court for the Eastern District of Virginia within 180 days after the date of the Director's decision on the applicant's request for reconsideration." *Id.* § 154(b)(4).

### b. Patent Term Adjustment Implementing Regulations

Promptly after passage of the AIPA, the USPTO promulgated 37 C.F.R. §§ 1.702–1.704 establishing procedures for the application and determination of patent term adjustments. *See* Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term, 65 Fed.Reg. 56366 (Sept. 18, 2000) (final rules); 65 Fed.Reg. 17215 (Mar. 31, 2000) (proposed rules). Together, §§ 1.702, 1.703, and 1.704 implement the PTA Statute by setting forth the precise circumstances warranting PTA credits and PTA reductions, as well as corresponding mathematical rules by which the USPTO computes the actual PTA. The relevant portions of the final PTA regulations provide:

 **§ 1.702 Grounds for adjustment of patent term due to examination delay under the Patent Term Guarantee Act of 1999 (original applications, other than designs, filed on or after May 29, 2000).**

 (a) Failure to take certain actions within specified time frames. Subject to the provisions of 35 U.S.C. 154(b) and this subpart, the term of an original patent shall be adjusted if the issuance of the patent was delayed due to the failure of the Office to:

**3.** The USPTO counts the mailing of a restriction requirement as a "notification under 35 U.S.C. § 132" for purposes of calculating A-delay. 35 U.S.C. § 132 ("any claim for a patent is rejected, or any objection or requirement made") When the USPTO issues a re-

striction requirement, the PTA clock for A-delay set forth in 37 C.F.R. § 1.702(a)(1) is stopped, and A-delay no longer accrues for failure of the USPTO to mail "notification under 35 U.S.C. § 132."

(1) Mail at least one of a notification under 35 U.S.C. 132 or a notice of allowance under 35 U.S.C. 151 not later than fourteen months after the date on which the application was filed under 35 U.S.C. 111(a) or fulfilled the requirements of 35 U.S.C. 371 in an international application;

### § 1.703 Period of adjustment of patent term due to examination delay.

(a) The period of adjustment under § 1.702(a) is the sum of the following periods:

(1) The number of days, if any, in the period beginning on the day after the date that is fourteen months after the date on which the application was filed under 35 U.S.C. 111(a) or fulfilled the requirements of 35 U.S.C. 371 and ending on the date of mailing of either an action under 35 U.S.C. 132, or a notice of allowance under 35 U.S.C. 151, whichever occurs first;

### § 1.704 Reduction of period of adjustment of patent term.

(a) The period of adjustment of the term of a patent under § 1.703(a) through (e) shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution (processing or examination) of the application.

. . .

(c) Circumstances that constitute a failure of the applicant to engage in reasonable efforts to conclude processing or examination of an application also include the following circumstances, which will result in the following reduction of the period of adjustment set forth in § 1.703 to the extent that the periods are not overlapping:

(12) Further prosecution via a continuing application,[4] in which case the period of adjustment set forth in § 1.703 shall not include any period that is prior to the actual filing date of the application that resulted in the patent.

The March 31, 2000 Notice of Proposed Rulemaking laid out the USPTO's policy on patent term adjustments for continuing applications explaining that

[s]ection 1.704(c)(16) [5] as proposed establishes further prosecution via a continuing application as a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of the

---

4. Continuing applications include "continuation" applications, "continuation-in-part" applications, and "divisional" applications. As Plaintiff's arguments only discuss divisional applications, and not continuation or continuation-in-part applications, the Court considers Plaintiff's argument as a challenge to the validity of the regulation with respect to divisional applications only.

5. Proposed regulation 1.704(c)(16) was codified at subsection (c)(11). Effective November 1, 2007, the provision was re-codified at subsection (c)(12). *See* Changes to Practice for Continued Examination Filings, Patent Applications Containing Patentably Indistinct Claims, and Examination of Claims in Patent Applications, 72 Fed.Reg. 46716, 46843 (Aug. 21, 2007). Effective December 13, 2013, the provision moved once again, to subsection (c)(13). *See* Changes to Implement the Patent Law Treaty, 78 Fed.Reg. 62368, 62385, 62408 (Oct. 21, 2013). The substance of subsection (c)(12) has remained consistent throughout these re codifications. Throughout the duration of this case (from the filing of the complaint through the summary judgment briefs), the regulation was codified at (c)(12) and as such, the Court will refer to it as § 1.704(c)(12) for the sake of clarity throughout this Opinion.

application. Currently, a continuing application may be used to: (1) Obtain further examination of an invention disclosed and claimed in the prior application (continuation application); (2) obtain examination (for the first time) of an invention disclosed but not claimed or not elected for examination in the prior application (divisional application); or (3) obtain examination of an invention neither disclosed nor claimed in the prior application (continuation-in-part application). The provisions of 35 U.S.C. 132(b) (which are being implemented in a separate rulemaking) will permit an applicant to obtain further or continued examination of an invention disclosed and claimed in an application, which renders it unnecessary for an applicant whose application is eligible for patent term adjustment under 35 U.S.C. 154(b) to file a continuing application to obtain further examination of an invention disclosed and claimed in an application. If an applicant is filing a continuing application to obtain examination (for the first time) of an invention disclosed but not claimed or not elected for examination in the prior application or an invention neither disclosed nor claimed in the prior application, it is not appropriate for that applicant to obtain any benefit in the continuing application for examination delays that might have occurred in the prior application. Thus, the Office is establishing further prosecution via a continuing application as a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of the application, in that the period of adjustment set forth in § 1.703 shall not include any period that is prior to the actual filing date of the application that resulted in the patent. Thus, if the application that resulted in the patent is a CPA, the period of adjustment set forth in § 1.703 (if any) will not include any period that is prior to the filing date of the request for that CPA.

Changes to Implement Patent Term Adjustment Under Twenty–Year Patent Term, 65 Fed.Reg. 17215 (Mar. 31, 2000) (proposed rules).

In response to the Notice of Proposed Rulemaking, comments regarding the applicability of PTA for USPTO delays prior to the actual filing date of the application that resulted in the patent were submitted to the USPTO. The final rules explained:

*Comment 42:* One comment argued that proposed § 1.704(c)(16) (§ 1.704(c)(11) as adopted) was unnecessary because time periods before the filing date of an application are not relevant to patent term adjustment and do not constitute delays in the prosecution of the application. Another comment asked whether applicant delays in a prior application would reduce the patent term adjustment in a continuation application.

*Response:* Delays before the filing date of an application are not relevant to whether an application is entitled to patent term adjustment, but the provision is considered necessary to remind applicants of this. Likewise, patent term adjustment will not be reduced by applicant actions or inactions (that amount to a failure to engage in reasonable efforts to conclude processing or examination of the application) occurring in a prior (or other) application.

Changes to Implement Patent Term Adjustment Under Twenty–Year Patent Term, 65 Fed.Reg. 56366 (Sept. 18, 2000) (final rules).

Since this regulatory scheme was promulgated in 2000, it has been consistently applied agency-wide and has remained unchallenged until the current lawsuit. (Doc. 14, at 28.)

## B. Material Facts

The facts in this case are not in dispute. On July 6, 2001, Plaintiff filed patent application number 09/899,905 ("the parent '905 application") with the USPTO. (Doc. 9–2, at 384–91.) As initially filed, the parent '905 application contained 58 separate claims. The patent examiner determined that the application was overbroad and contained *four* patentably distinct inventions. Accordingly, on September 21, 2006, the USPTO issued Plaintiff a restriction requirement, dividing the claims within the application into four groups of inventions and directing Plaintiff to select one for examination. (*Id.* at 395–99.) This was the first official action taken by the USPTO on this parent '905 application. Plaintiff filed a response arguing against restriction. The USPTO rejected Plaintiff's arguments and the restriction requirement was made final. (*Id.* at 400–23.) Plaintiff then selected one of the four groups of inventions for examination on the merits. On January 8, 2010, Plaintiff filed two divisional patent applications 12/684,451 ("the '451 application") and 12/684,541 ("the '541 application") from two of the groups that Plaintiff elected not to pursue in the parent '905 application. (Doc. 9–2, at 23–64, 152–193.)

On June 22, 2010, the parent '905 application issued and became U.S. Patent No. 7,742,984 ("the '984 patent"). (*Id.* at 476.) The USPTO awarded the '984 patent 2,104 days of PTA for an enforceable life of 16 years, 9 months, and 17 days. (*Id.*) Of the 2,104 days of PTA, 1,476 days were A-delay attributable to the delay in issuing the restriction requirement. (*Id.* at 351.) On January 8, 2013, the '451 application issued into the '362 patent and was awarded zero days of PTA,[6] thus leading to an enforceable life of 8 years, 5 months, and 29 days. (Doc 11, at 11.) On March 19, 2013, the '541 application issued into the '963 patent and was also awarded zero days of PTA,[7] thus leading to an enforceable life of 8 years, 3 months, and 18 days. (*Id.*)

| Patent | Actual Application Filing Date | Effective Filing Date | Issue Date | Final PTA Determination | Expiration Date | Enforceable Lifetime [8] |
|---|---|---|---|---|---|---|
| '984 patent | July 6, 2001 | July 6, 2001 | June 22, 2010 | 2,104 days | April 7, 2027 | 16 years, 9 months, 17 days |
| '362 patent | January 8, 2010 | July 6, 2001 | January 8, 2013 | 0 | July 6, 2021 | 8 years, 5 months, 29 days |
| '963 patent | January 8, 2010 | July 6, 2001 | March 19, 2013 | 0 | July 6, 2021 | 8 years, 3 months, 18 days |

6. According to Plaintiff, the full calculation for PTA for the '362 patent was: 0 days of Adelay + 0 days of B-delay - 0 days of overlapping USPTO delay - 179 days of applicant delay = 0 days PTA. (Doc. 1, at 7.) The Patent Term Adjustments calculation from the Secure Authentication and Payment System indicates 205 days of applicant delay for the '362 patent, so the Court is unsure whether Plaintiff's asserted 179 days is correct. *See* Doc. 9–2, at 18.

7. The full calculation for PTA for the '362 patent was: 13 days of A-delay + 0 days of B-delay - 0 days of overlapping USPTO delay - 216 days of applicant delay = 0 days PTA. (Doc. 1, at 8.)

8. The enforceable lifetime of the '362 and '963 patents could have been three years longer had Plaintiff not waited over three years after the issuance of the restriction requirement to file these related divisional patent applications. (Doc. 14, at 29.)

Plaintiff filed petitions for reconsideration of the PTA calculations on both the '362 and '963 patents, arguing that those divisional patents should receive 1,476 days of PTA from the delay in the issuance of the restriction requirement in the parent '905 application.[9] (Doc 9-2, at 106–13, 315–23.) The USPTO denied the petitions on the grounds that A-delay from a parent patent is not considered in the PTA determination of divisional patents. (Doc 9-2, at 114–16, 324–28.) The USPTO determined that Plaintiff's divisional applications, which are a form of "further prosecution via a continuing application," constituted a failure to engage in a reasonable effort to conclude prosecution as dictated by 37 C.F.R. 1.704(c)(12) such that "the period of adjustment set forth in § 1.703 shall not include any period that is prior to the actual filing date of the application that resulted in the patent." (*Id.*)

Plaintiff filed the current action before the United States District Court for the Eastern District of Virginia after the USPTO declined to adjust its PTA calculation for the '362 and '963 patents. In particular, Plaintiff complains that the USPTO's interpretation and application of the PTA Statute, which resulted in zero days of PTA for the divisional patents, is contrary to the statute's plain and unambiguous language, and as such, 37 C.F.R. 1.704(c)(12)[10] should be held facially invalid and invalid as applied. (Doc. 1.)

On October 25, 2013 and November 15, 2013, the parties filed cross-motions for summary judgment, agreeing that only questions of law were in dispute. (Docs. 10 and 13.) The Court heard oral argument from the parties on December 19, 2013 and took the matter under advisement.

## II. DISCUSSION

### A. Standards of Review for an Agency Promulgated Regulation

#### i. *Summary Judgment*

▮ The Court must grant summary judgment if the moving party demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where, as here, judicial review is limited to the Administrative Record and the parties agree that no genuine issue of material fact exists, the Court need only decide the relevant legal questions presented by the suit to properly resolve the case on summary judgment. *Wyeth v. Kappos*, 591 F.3d 1364, 1369 (Fed.Cir.2010). The USPTO's final determination of PTA is reviewable under the standards set forth in the Administrative Procedure Act. 35 U.S.C. § 154(b)(4)(A); *see also Dickinson v. Zurko*, 527 U.S. 150, 165, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). Thus, a district court may only set

---

**9.** Seeking an adjusted PTA calculation for the '362 patent of: 1476 days A-delay (from the delay in issuing the restriction requirement) - 179 days of applicant delay = 1,297 days of PTA. (Doc. 11, at 19.) Seeking an adjusted PTA calculation for the '963 patent of: 1476 days A-delay (from the delay in issuing the restriction requirement) + 13 days A-delay (from the '541 application) - 216 days of applicant delay = 1,273 days of PTA. (Doc. 11, at 20.)

**10.** The Complaint erroneously states that Plaintiff prays for a declaratory judgment that § 1.703(c)(12) is invalid. There is no such regulation as 37 C.F.R. § 1.703(c)(12). It is apparent from the cross-motions for summary judgment that Plaintiff intended to request a declaratory judgment that § 1.704(c)(12) is invalid.

aside the USPTO's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In undertaking this review, the Court "perform[s] only the limited, albeit important, task of reviewing agency action to determine whether the agency conformed with controlling statutes, and whether the agency has committed a clear error of judgment." *Holly Hill Farm v. United States,* 447 F.3d 258, 263 (4th Cir.2006) (citations omitted).

### ii. *Unambiguous Statutory Language*

 "As always, the 'starting point in every case involving construction of a statute is the language itself.'" *United States v. Hohri,* 482 U.S. 64, 68, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987) (quoting *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *City of Arlington v. FCC,* —— U.S. ——, 133 S.Ct. 1863, 1868, —— L.Ed.2d —— (2013) (internal citations omitted). To the extent that an agency's interpretation is at odds with the plain language of an unambiguous statute no deference is afforded to that interpretation. *Smith v. City of Jackson, Miss.,* 544 U.S. 228, 267, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005) (citations omitted).

### iii. *Ambiguous Statutory Language*

 Normally, when a court reviews a challenge to an agency's construction of a statute administered by that agency, it will follow the two-step approach set out in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, the *Chevron* approach asks whether Congress has spoken on the precise issue. *City of Arlington,* 133 S.Ct. at 1868. Second, if

Congress has not addressed the question and explicitly left a gap for the agency to fill, the Court asks whether the agency's construction and application of the statute permissible. *Id.*

When Congress has delegated to the agency authority to make rules carrying the force of law, and the challenged agency interpretation was promulgated in the exercise of that authority, then the agency's rule is entitled to deference "as long as it is a permissible construction of the statute, even if it differs from how the court would have interpreted the statute in the absence of an agency regulation."

*Abraxis Bioscience,* —— F.Supp.3d at ——, 2014 WL 65739, at *10 (quoting *Sebelius v. Auburn Reg'l Med. Ctr.,* —— U.S. ——, 133 S.Ct. 817, 184 L.Ed.2d 627 (2013)).

The Federal Circuit, however, has held that with respect to USPTO regulations, "[b]ecause Congress has not vested the Commissioner with any general substantive rulemaking power," USPTO regulations "cannot possibly have the 'force and effect of law'" and "[t]hus, the rule of controlling deference set forth in *Chevron* does not apply." *Merck & Co., Inc. v. Kessler,* 80 F.3d 1543, 1550 (Fed.Cir.1996); *see also Univ. of Massachusetts v. Kappos,* 903 F.Supp.2d 77, 84 (D.D.C.2012) (holding that the USPTO lacks the authority to issue substantive rules and construing 35 U.S.C. § 154(b)(3)(A) to limit the USPTO's authority to promulgate "only procedural regulations regarding the conduct of proceedings before the agency").

 USPTO regulations, however, may still qualify for some deference under *Skidmore,* where a court looks to an agency's basic "power to persuade." *Id.* "The weight [accorded to an agency's] judgment in a particular case will depend upon the thoroughness evident in its consideration,

the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). The Federal Circuit has explained that under *Skidmore*, a court considers "if the agency has conducted a careful analysis of the statutory issue, if the agency's position has been consistent and reflects agency-wide policy, and if the agency's position constitutes a reasonable conclusion as to the proper construction of the statute, even if [the court] might not have adopted that construction without the benefit of the agency's analysis." *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1366 (Fed.Cir.2005). Moreover, "the Supreme Court has instructed that an administrative practice has particular weight when it involves a contemporaneous construction of a statute by the [persons] charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new." *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1341 (Fed.Cir.2008) (citations omitted) (finding that an agency ruling "which was consistently applied for almost ten years and was neither a sudden and unexpected change nor a failure to take account of prior inconsistent interpretations, has 'power to persuade,'" under *Skidmore*).

■ Where a party challenges a USPTO regulation that was established pursuant to the general procedural rulemaking authority of § 154(b)(3)(A), the USPTO's interpretation may be entitled to some deference. *Abraxis Bioscience, LLC v. Kappos*, No. 1:11–CV–00730, —— F.Supp.3d ——, ———–——, 2014 WL 65739, at *10–11 (D.D.C. Jan. 8, 2014) (granting *Skidmore* deference to USPTO regulation 37 C.F.R. § 1.703(b) because it was issued pursuant to statutory authority to address procedural issues in § 154(b)(3)(A)). Alternatively, where a party challenges a USPTO regulation that was promulgated pursuant to the specific grant of substantive rulemaking authority of § 154(b)(2)(C)(iii), the USPTO's regulation may be entitled to a higher degree of *Chevron* deference. *Gilead Sciences, Inc. v. Rea*, No. 1:12–CV–1090, 976 F.Supp.2d 833, 836, 2013 WL 5504370, at *3 (E.D.Va. Oct. 3, 2013) (granting *Chevron* deference to USPTO regulation 37 C.F.R. § 1.704(c)(8) because "Congress explicitly directed the USPTO to 'prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application.'") (citing 35 U.S.C. § 154(b)(2)(C)(iii)).

The USPTO contends that the regulatory scheme which does not allow events that occurred prior to the actual filing date of a patent application to be considered for PTA (§§ 1.702–1.704) was promulgated pursuant to § 154(b)(3)(A) and as such is entitled to some deference. Additionally, the USPTO contends that § 1.704 was *also* promulgated pursuant to the substantive rulemaking authority of § 154(b)(2)(C)(iii), and as such could be properly upheld by applying either *Skidmore* deference or *Chevron* deference.

**B. Analysis**

The Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment for two reasons. First, the Court holds that the language of the PTA Statute unambiguously applies to only one patent application—providing PTA for delays that occurred during the prosecution of the application from which the patent issued. Alternatively, the Court holds that to the extent that the language of the PTA Stat-

ute is ambiguous, the USPTO's long-standing interpretation of the statute, as manifested in 37 C.F.R. §§ 1.702, 1.703, and 1.704(c)(12), is reasonable and entitled to some deference.

### a. Language of the PTA Statute

■ The Court holds that the plain language of the PTA Statute applies to only one patent—the patent from which the application that accrued PTA issued, as indicated by the use of one-to-one correspondence for the terms "an original patent," "an application" and "the patent."

The portion of the PTA Statute that relates to A-delay states:

> **(A) Guarantee of prompt Patent and Trademark Office responses.**—Subject to the limitations under paragraph (2), if the issue of *an original patent* is delayed due to the failure of the Patent and Trademark Office to—
>
> > **(i)** provide at least one of the notifications under section 132 or a notice of allowance under section 151 not later than 14 months after—
> >
> > > **(I)** the date on which *an application* was filed under section 111(a);
> >
> > ...
>
> the term of *the patent* shall be extended 1 day for each day after the end of the period specified in clause (i), (ii), (iii), or (iv), as the case may be, until the action described in such clause is taken.

35 U.S.C. § 154(b)(1)(A) (emphasis added).

Plaintiff contends that the initial application filed for the parent '984 patent should yield A-delay for multiple issued patents

(the parent patent and the divisional patents) due to the delay in the issuance of the restriction requirement in the parent application for essentially three reasons. First, Plaintiff contends that the term "original patent," as used in § 154(b)(1)(A), "is not limited to ... the first patent in a patent family," but encompasses divisional applications as well.[11] (Doc. 11, at 6.) Second, Plaintiff asserts that the use of the indefinite article "an" before "application" rather than the definite article "the" demonstrates that "application" can refer to the parent patent's application rather than just the application that resulted in the patent. (*Id.* at 18–20.) Finally, in Plaintiff's Reply Brief, he argues that the Court should look to the Dictionary Act which states that "unless the context indicates otherwise," "words importing the singular include and apply to several persons, parties, or things; words importing the plural include the singular." 1 U.S.C. § 1. Plaintiff argues that the USPTO failed to show how the context of the PTA Statute overrides the general presumption that use of the singular includes the plural such that the references to "the patent shall be extended" should not include divisional patents as well.

■ The Court is unpersuaded by Plaintiff's argument that the plain language of the PTA Statute unambiguously demonstrates that divisional patents are entitled to PTA that accrued in the parent patent's application, prior to the filing of the application that resulted in the patent.

First, the Court finds that the PTA Statute as a whole uses the terms "an original

---

**11.** It is uncontested that "original patent" can refer to either a parent patent or a divisional patent. *See* Doc. 14, at 23–24 ("Defendant fully agrees with this proposition, and indeed, notes that this meaning was made clear in the final Federal Register notice accompanying 37 C.F.R. §§ 1.702–1.704. *See* 65 Fed.Reg. at 56375 (stating that "the term 'original appli-

cation' includes a continuing application (continuation, divisional, or continuation-in-part ..."); *accord* MPEP § 201.04(a) ("'Original' is used in the patent statute and rules to refer to an application which is not a reissue application. An original application may be a first filing or a continuing application.")").

patent," "a patent," and "the patent" interchangeably; the same is also true of "an application" and "the application." *See* 35 U.S.C. § 154(b)(1)(A) ("an original patent" and—in the final clause—"the patent"), (b)(1)(A)(i)(I) ("an application"), (b)(1)(A)(iii) ("an application" and "the application"), (b)(1)(A)(iv) ("a patent"), (b)(1)(B) ("an original patent," "a patent," and—in the final clause—"the patent"), (b)(1)(B)(i) ("the application"), (b)(1)(B)(iii) ("the application"), (b)(1)(C) ("an original patent" and—in the final clause—"the patent"), (b)(1)(C)(iii) ("the patent"), (b)(2)(C)(i) ("a patent"). As such, it would be difficult for the Court to find that Congress manifested an unambiguous intent for divisional patents to double count PTA simply because the article "an" was used rather than "the" in a single clause of the PTA Statute.

■ Second, the Court finds that the language of the PTA Statute demonstrates that it contemplates a one-to-one ratio between applications filed, patents issued, and PTA awarded. The PTA Statute manifests this intent by using the singular rather than the plural each time it refers to an issued patent and an application. If Congress had intended for a single application to potentially yield PTA on multiple patents, it would have said, "the term of *the patents* shall be extended 1 day." It did not. Instead, in using the singular, the plain language manifests an intent for one application to yield A-delay for one issued patent, specifically the patent that issued from that specific application.

Furthermore, the Court is unpersuaded that it should apply the Dictionary Act to override the plain language of the PTA Statute in order to provide PTA to multiple patents. Specifically, the Court finds that "context indicates otherwise" such that in the case of the PTA Statute, the fallback provisions of the Dictionary Act

do not apply because "words importing the singular" do not include the plural in the PTA Statute.

■ Courts have rarely applied the Dictionary Act, and have only done so where "necessary to carry out the evident intent of the statute." *United States v. Hayes,* 555 U.S. 415, 422 n. 5, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009) (quoting *First Nat'l Bank in St. Louis v. Missouri,* 263 U.S. 640, 657, 44 S.Ct. 213, 68 L.Ed. 486 (1924), to support its determination that the word "element" does not include the plural "elements"); *accord. Taylor v. Acxiom Corp.,* 612 F.3d 325, 336 n. 8 (5th Cir.2010); *Reid v. Angelone,* 369 F.3d 363, 369 n. 2 (4th Cir.2004). Thus, the rules of construction set forth in the Dictionary Act do not constitute legal "presumptions" so much as fallback rules, which are wholly unnecessary (and therefore inapplicable) in cases where, as here, the Statute unambiguously speaks in the singular.

The first indication that the context of the PTA Statute demonstrates that words importing the singular should remain singular is that in portions of the Statute, the language explicitly indicates when it is referencing the plural. *See* 35 U.S.C. § 154(a)(2) (referencing "an earlier filed application *or applications*"). This demonstrates that for this particular statute, where Congress intends for a rule to encompass the plural, it knows how to do so. Notably, Section 154(b)(1)(A)(i)(I) is devoid of any similar language indicating that Congress intends for the PTA from a single delay to apply to multiple patents derived from multiple applications.

An additional indication that the context of the PTA Statute demonstrates that PTA is only to be applied to delays accrued in the application from which the patent issued is that the statute explicitly differentiates when it intends to apply to an earlier application. *See* 35 U.S.C. § 154(a)(2)

(providing that a patent grant "shall be for a term beginning on the date on which the patent issues and ending 20 years from the date on which the application for the patent was filed in the United States *or, if the application contains a specific reference to an earlier filed application or applications under section ... 121 ..., from the date on which the earliest such application was filed*" (emphasis added)). Had Congress intended, as Plaintiff argues, to endow patents issuing from divisional applications with the exact same patent term rights as those issuing from parent applications, the second clause of this provision would have been unnecessary; Congress would simply have provided that *all* patents terms extend "20 years from the date on which the application for the patent was filed."

Furthermore, the context of the PTA Statute demonstrates a statutory scheme for divisional patents which serves important public policy goals that an inventor must weigh when determining how broadly to fashion his patent application. It leaves an inventor free to broadly file claims in a parent application and extends the protection of both the safe harbor and the priority date of the parent to any divisional applications. However, in deciding how broadly to fashion his application, the inventor must weigh these benefits against the risk that the divisional applications may ultimately receive shorter enforceable patent terms. This set of trade-offs is manifestly in the public interest. It offers inventors fair and valuable protections while simultaneously incentivizing the filing of narrowly tailored applications that do not unduly burden the USPTO's examination process. This demonstrates an intent to hold an inventor responsible, as the architect of the patent application, for his decision to write a broad patent application with more than one invention.[12]

In summary, 35 U.S.C. § 154(b)(1)(A)(i)(I) unambiguously evinces a one-to-one correspondence with an intent to link the PTA available to a given patent to the events that occurred during the course of the examination and prosecution of the application *from which that patent issued.* As 37 C.F.R. § 1.704(c)(12) merely restates this result, the Court grants summary judgment to the USPTO based upon the plain language of the PTA Statute.

### b. USPTO's Construction of the PTA Statute (the PTA Regulations) is Reasonable and Persuasive

In the alternative, to the extent that the language of § 154(b)(1)(A) is somewhat ambiguous, the Court holds that the USPTO's longstanding interpretation of the statute, as manifested in 37 C.F.R. §§ 1.702, 1.703, and § 1.704(c)(12), is rea-

12. Plaintiff argues that "[b]ecause the USPTO issued a restriction requirement, and did not withdraw the restriction requirement during the pendency of the '984 patent, Mr. Mohsenzadeh *was forced* to file divisional applications to capture the restricted subject matter. Those divisional applications spent time being examined, and as a result, the enforceable lifetimes of the '362 and '963 patents claiming that restricted subject matter were reduced to just 8 years, 5 months and 29 days, and 8 years, 5 months, and 18 days respectively." (Doc. 11, at 15–16) (emphasis added). Plaintiff does not seem to take responsibility for the fact that he submitted a broad patent application with four patentably distinct inventions. Plaintiff had to file divisional applications not because the USPTO issued a restriction requirement but because Plaintiff submitted a patent application that contained more than one distinct invention. Furthermore, part of the reason that the divisional patents' effective life was reduced so substantially was that Plaintiff waited over three years after issuance of the restriction requirement to file his divisional applications. (Doc. 9–2.)

sonable and persuasive and as such is entitled to some deference.[13]

As promulgated, §§ 1.702, 1.703 and 1.704 work in tandem. First, § 1.702, which closely tracks and largely repeats the language of 35 U.S.C. § 154(b)(1), sets forth the qualifying "[g]rounds for adjustment of patent term due to examination delay." Second, § 1.703 then translates each of these grounds into a mathematical algorithm. Third, § 1.704 completes the PTA computation by setting forth both (i) the substantive circumstances under which the PTA calculated under § 1.703 is reduced to account for applicant delay and (ii) mathematical formulas translating each enumerated circumstance into a numerical subtraction from the computed PTA.

The last clause of § 1.704(c), subsection (c)(12), operates somewhat differently from the remainder of the regulation. Instead of setting out circumstances that will result in a PTA *reduction,* it provides that PTA is simply *unavailable,* in the first instance, "for any period that is prior to the actual date of the application that resulted in the patent." 37 C.F.R. § 1.704(c)(12). In other words, subsection (c)(12) confirms and clarifies that PTA accrued by a parent application does not carry over to any continuing applications that claim the parent's priority date.

Although sections 1.702(a) and 1.703(a) largely repeat the language of the PTA Statute, there is one difference. Rather than using the indefinite article "an" when referring to "application," sections 1.702(a) and 1.703(a) use the definite article "the," confirming and clarifying that PTA is only applicable to events that occurred during the course of the examination and prosecution of the application *from which that patent issued.*

When determining what weight to afford a USPTO regulation promulgated pursuant to the general procedural rulemaking authority of § 154(b)(3)(A), the Court considers a number of factors: (1) whether the regulations were a contemporaneous construction of a statute by the persons charged with the responsibility implementing the statute, (2) the thoroughness evident in its consideration and the validity of its reasoning, (3) its consistency with earlier and later pronouncements, and (4) whether it reflects agency-wide policy. *Cathedral Candle Co.,* 400 F.3d at 1366; *Abraxis Bioscience,* —— F.Supp.3d at —— – ——, 2014 WL 65739, at *19–20.

The USPTO's interpretation of section 154(b)(1)(A), as reflected in the challenged regulations, has been consistently applied by the USPTO following the formal adoption of the regulation through notice and comment rule making. Specifically, these regulations, which exclude the consideration of time periods before the actual filing date of an application, have been in effect for over a decade, since October 18, 2000, six months after the date of enactment of the AIPA on May 29, 2000. *See* Final Rule, 65 Fed.Reg. at 56,366. Thus, this regulation was adopted virtually contemporaneously with the enactment of AIPA containing the statutory provision, which is the subject of the implementing regulation.

In adopting the Final Rule, the USPTO considered whether section 1.704(c)(12) was even necessary given that it was widely understood that the time period prior to the actual filing date of an application is not relevant in the determination of PTA.

---

**13.** Because the Court grants *Skidmore* deference to the PTA Regulations as reasonable and persuasive, it is unnecessary for the Court to reach the issue of whether to grant *Chevron* deference to section 1.704(c)(12).

The USPTO responded to such comments, explaining that:

Delays before the filing date of an application are not relevant to whether an application is entitled to patent term adjustment, but the provision is considered necessary to remind applicants of this. Likewise, patent term adjustment will not be reduced by applicant actions or inactions (that amount to a failure to engage in reasonable efforts to conclude processing or examination of the application) occurring in a prior (or other) application.

*Id.* at 56,376 ("Response" to "Comment 42").

The Final Rule does not indicate that any comments challenging this interpretation were submitted. Furthermore, since this regulatory scheme regarding the application of PTA in a divisional application was promulgated thirteen years ago, it has been consistently applied agency-wide and has remained unchallenged until the current lawsuit. (Doc. 14, at 28.) As such, the Court finds that the USPTO's satisfaction of three factors regarding the formality of adoption by the agency of its interpretation, the timing of adoption contemporaneously with enactment of the statute subject to interpretation, and the duration of consistent application by the agency of the interpretation, is "significant" and favor giving deference to the USPTO's interpretation.

Plaintiff contends that construing section 154(b)(1)(A) as the USPTO urges, would mean that "patents issuing from divisional applications are not entitled to any patent term adjustment at all, even for delays caused solely by the USPTO, despite a clear statutory obligation that the USPTO provide for a term adjustment." (Doc 17, at 5.) The Court disagrees with Plaintiff's explanation of PTA for divisional applications. Rather than preventing an inventor from receiving "any" patent term adjustment, the PTA regulations do not allow inventors to double-count patent terms adjustments. The USPTO contends that Plaintiff's interpretation would lead to an absurd result, that a patent would be "entitled not only to the PTA that accrued to *its own* application, but also, at least in the case of a divisional patent, to the 'A(i)(I) delay' that accrued to the divisional's parent as well." (Doc. 14, at 24.)

The Court agrees with the USPTO. The PTA Statute plainly contemplates a PTA calculation that is limited to events that occurred during the examination of the application *from which a given patent issued.* As such, the promulgation of the challenged regulations—namely, 37 C.F.R. §§ 1.702, 1.703, and 1.704—ensure that a patent applicant cannot double-count PTA that has already been awarded for one patent in later divisional patents.

Furthermore, in order to safeguard against any hypothetical "delay in issuing a restriction requirement for so long ... as to deny an applicant *any* enforceable life for a divisional patent, without any recourse at all for a patent owner" the USPTO has put certain policies in place. (Doc. 19, at 14.) Specifically, the Manual of Patent Examining Procedure ("MPEP") § 811 expressly provides that "the examiner should make a [restriction] requirement as early as possible in the prosecution." In addition, an inventor, as the architect of his patent application, has the power to minimize the risk of receiving a restriction requirement at all, much less one that takes the USPTO a large amount of time to identify and address, by filing an application with claims that are not directed to two or more independent and distinct inventions. *See supra* page 20.

As such, the Court holds that the USPTO's interpretation of the PTA Statute, as

evinced by PTA Regulations 1.702–1.704, is reasonable and persuasive in the context of the Statute. Accordingly, the Court upholds the USPTO's decision to deny a patent term adjustment for a later divisional application for the delay in the issuance of a restriction requirement in a parent application.

## III. CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment (Doc. 13) and DENIES Plaintiff's Motion for Summary Judgment (Doc. 10) for two reasons. First, the Court holds that the PTA Statute unambiguously applies to only one patent application—providing PTA only for delays that occurred during the prosecution of the application from which the patent issued. Alternatively, the Court holds that to the extent that the language of section 154(b)(1)(A) is ambiguous, the USPTO's longstanding interpretation of the statute, as manifested in 37 C.F.R. §§ 1.702, 1.703, and 1.704(c)(12), is reasonable and entitled to some deference.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 13) is **GRANTED** and Plaintiff's Motion for Summary Judgment (Doc. 10) is **DENIED.**

**IT IS SO ORDERED.**